J-S35006-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE:  ADOPTION OF:  F.A.R., A MINOR<br><br>APPEAL OF:  R.R., MOTHER | IN THE SUPERIOR COURT OF PENNSYLVANIA<br><br>No. 398 MDA 2018 |

Appeal from the Order Entered February 8, 2018
In the Court of Common Pleas of York County
Orphans' Court at No(s): 2017-188

| | |
|---|---|
| IN RE:  ADOPTION OF:  S.C.C., A MINOR<br><br>APPEAL OF:  R.R., MOTHER | IN THE SUPERIOR COURT OF PENNSYLVANIA<br><br>No. 399 MDA 2018 |

Appeal from the Order Entered February 8, 2018
In the Court of Common Pleas of York County
Orphans' Court at No(s): 2017-187

| | |
|---|---|
| IN RE:  ADOPTION OF:  S.C.C., A MINOR<br><br>APPEAL OF:  R.R., MOTHER | IN THE SUPERIOR COURT OF PENNSYLVANIA<br><br>No. 402 MDA 2018 |

Appeal from the Order Entered February 7, 2018
In the Court of Common Pleas of York County
Juvenile Division at No(s):  CP-67-DP-0000097-2016

| | |
|---|---|
| IN RE:  ADOPTION OF:  F.A.R., A MINOR<br><br>APPEAL OF:  R.R., MOTHER | IN THE SUPERIOR COURT OF PENNSYLVANIA<br><br>No. 403 MDA 2018 |

Appeal from the Order Entered February 7, 2018
In the Court of Common Pleas of York County

J-S35006-18

Juvenile Division at No(s): CP-67-DP-0000768-2006

BEFORE:  BENDER, P.J.E., PANELLA, J., and MURRAY, J.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED OCTOBER 16, 2018**

R.R. ("Mother") filed separate appeals from the orders, dated February 2, 2018, and entered on February 8, 2018, that involuntarily terminated her parental rights to her minor children, F.A.R., born in April of 2006, and S.C.C., born in February of 2004 (collectively "Children").[1]  Mother also filed separate appeals from the orders, dated February 6, 2018, and entered on February 7, 2018, that changed the goals for Children to adoption.[2]  Following our review, we affirm the orders on appeal.

At the end of the February 2, 2018 hearing, the trial court announced its grant of the termination and goal change petitions filed by the York County Office of Children Youth and Families ("Agency"), stating:

_____

[1] The fathers of both Children are deceased.

[2] Initially, Mother's counsel, Karen E. Comery, Esq., sought to withdraw her representation of Mother pursuant to **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009). Following our review of counsel's brief, we recognized that it was not in conformity with **Anders** and **Santiago** in that the brief did not contain counsel's conclusion that the appeals were frivolous; nor did it provide the reasons for such a conclusion.  Accordingly, we were compelled to remand the matter and we directed counsel to submit either an advocate's brief or a revised **Anders** brief that comported with **Santiago**.  Mother was provided with a thirty-day period in which she could file a response.  This Court has now received counsel's new brief, which no longer requests counsel's withdrawal.  Rather, counsel has filed an advocate's brief and Mother has not filed a response.

- 2 -

The [c]ourt will first deal with [S.C.C.]. This is a case where the two girls were really raised on separate tracks. The [c]ourt notes specifically the findings of fact at the time of adjudication in [S.C.C.]'s case indicating that [S.C.C.] was 12 when she came into care and quoting, "the child was raised by her grandfather until approximately six months ago when the minor child was returned to her [M]other. The child was subsequently hospitalized at Phil Haven Hospital due to her deteriorating behaviors. Phil Haven Hospital recommended placement of the minor child in a CRR host home upon discharge. The minor child was placed in three different CRR host home placements since her discharge from Phil Haven Hospital. The child's behaviors deteriorated including stealing, behavioral problems at school, verbal aggression toward the foster parents, physical aggression toward the foster parents, and destruction of the foster parents' personal property. The [M]other had stated that she's not a resource for her daughter due to the child's behaviors. The father of the minor child is deceased."

The [c]ourt notes that part of the record in that case also includes the petition which was filed April 1[], 2016. One of the allegations in that case, specifically number four, indicates quote, "information received was that the minor child [S.C.C.] was raised by her grandfather for most of her life due to her [M]other's criminal charges."

Mother pled guilty to involuntary manslaughter, provocation from individual killed. The [c]ourt appreciates that the [A]gency provided certified copies of the criminal record for [M]other. Notably[,] the case from 2004 involved the death of the child's father at the hands of [M]other. Interestingly, in that case, the defense and the Commonwealth agreed that the [M]other suffered from battered women syndrome[,] which as everyone knows is very difficult to prove as a basis in a case. Those were the circumstances under which [S.C.C.] came into the world.

Both [S.C.C.] and [M]other have progressed substantially from that very difficult start. While the [c]ourt is never pleased to hear that a young lady has been in a setting such as United Methodist Home for so long[,] certainly she has come a long way from where she started in this case. The fact that she was able to maintain at any place for two years is a substantial change from where she

- 3 -

started in this case. The [c]ourt was impressed by the maturity which she displayed during her testimony today.

Because this child was raised substantially by her grandfather, she never really was able to develop the same bond with either her [M]other or her sister that would happen had she been raised in the same home with [F.A.R.]

There were several references to an incident that occurred during a proceeding in front of this [c]ourt. The court notes that that occurred on February 21[], 2017. The Master's recommendation and permanency review order from that date reads quote, "[M]other left in the middle of today's hearing asking to be excused and offering to sign a voluntary consent to termination. She also indicated to counsel that she does not wish to participate in future hearings." This incident was very difficult for the [C]hild to process. In fact, the [c]ourt finds that it created a significant rift that was defined [as] irreparable at that point.

. . .

The court does appreciate that [M]other has been consistent in attending proceedings for both [C]hildren. However, she has a failed to perform her parental duties throughout the period of time that the [C]hildren have been in placement[; namely, due to Mother's housing issues, drug use, repeated incarcerations, and other issues.]

. . .

The [c]ourt appreciates that [M]other has made some attempts to remedy her situation. She has participated in some counseling, she has participated in some drug testing, she has participated in some drug treatment, and she has attended some visits. However, she has not made progress to the point that she has moved beyond supervised visit[ation], that she currently has appropriate housing, that she has addressed her drug and alcohol issues to the point that the [c]ourt would not have concerns about the safety of the [C]hildren.

. . .

The [c]ourt notes that in [F.A.R.]'s case the petition for placement was filed December 9 of 2015. Numbers 2 and 3 in that petition

- 4 -

indicate on or about December 8, 2015, [the Agency] received a referral regarding the minor child [F.A.R.] due to allegations of substance abuse by [M]other. Number 3 reads, "it was reported that [M]other has a history of substance abuse, specifically marijuana and cocaine." The court notes that the probation officer testified today that just in the past week[,] [M]other has tested positive for marijuana and cocaine. It is unfortunate that two years later those specific issues have not been addressed by [M]other.

. . .

Both of these [C]hildren have substantial mental health issues.

To her credit, [S.C.C.] has worked very hard while at United Methodist Home of York to move to a point where she is ready to transition to a regular foster home. Essentially[,] she has special emotional needs.

The history and findings of the [c]ourt in this case indicate that [M]other also has a significant history of different mental health diagnoses. Mother has had difficulty addressing her own needs. It is very clear that [M]other would be completely unable to provide an emotionally healthy and stable situation in which [S.C.C.]'s special emotional needs could be appropriately addressed. In essence, they would be like oil and water. [S.C.C.] needs a home that is stable with someone who is able to focus on her needs.

While it is clear that [S.C.C.] loves her mother, [S.C.C.] spent most of her life with her grandfather, not with her mother. Therefore, the bond with her mother is not anything close to a regular parental bond. She is aware of her as her biological mother and has love for her because of that relationship. However, it is not a healthy bond such that [S.C.C.] looks to her as a source of comfort and safety long term.

. . .

[F.A.R.]'s situation is markedly different in that there is a strong bond between [F.A.R.] and her mother. However, a child can have a strong bond that in their situation can best be described as toxic. If an adult has a relationship with someone who continuously fails to recognize their emotional needs, includes them in

- 5 -

conversations about thing like getting kicked out of a recovery house and other adult topics to the point that the child has safety concerns for the parent and a role reversal, that is not a bond that creates a situation in which a child can thrive. In fact, the strength of the bond between [F.A.R.] and her mother combined with the negative influence only serves to exacerbate the effect of the negative impact of the bond.

The [c]ourt notes specifically and commends [M]other for the effort she has made to complete the Freedom [P]rogram [in prison] and to move toward recovery. The [c]ourt hopes that she will continue to move in a positive direction so that these young ladies as adults will be able to have a relationship with their [M]other. The [c]ourt also hopes that if … [M]other moves in that direction[,] the foster and adoptive parents may find a way the [C]hildren could have appropriate contact. However, whether or not the [C]hildren have contact with … [M]other is entirely dependent on [M]other['s] moving in the right direction such that the adoptive parents at their sole discretion could make a decision as to the appropriateness of any continued contact. At this point in time that contact has not been appropriate, would still need to be supervised, and is not creating a positive situation for either child where they look at [M]other in any way as a source of safety or stability.

Order, 2/2/18, at 2-11 (delivered orally at end of the hearing). The court further discussed the facts as they relate to the goal change petitions, relying on its findings as to the termination of Mother's parental rights to the Children. The court also concluded that in light of its decision that Mother's parental rights should be terminated, "a goal of reunification was no longer feasible." Trial Court Opinion ("TCO"), 3/23/18, at 1.

Mother filed a notice of appeal and a concise statement of errors complained of on appeal. In her brief, Mother sets forth the following three issues:

I.      Whether the lower court erred by granting [the Agency's] requested goal change from reunification to adoption without clear and convincing evidence that this change of goal would serve the best interests of the Children.

II.     Whether the lower court erred by granting the request of [the Agency] to terminate Appellant Mother's parental rights when the Agency failed to present clear and convincing evidence under 23 Pa.C.S.[] [§] 2511(a)(1)[,] (2)[,] (5)[,] (8).

III.    Whether the lower court erred when it found that [the Agency] presented clear and convincing evidence that termination of Appellant Mother's parental rights best served the emotional needs and welfare of the Child[ren].

Mother's brief at 5.

For ease of disposition, we will initially address Mother's issues relating to the termination of her parental rights, *i.e.*, issues II and III. We review an order terminating parental rights in accordance with the following standard:

> When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009) (quoting *In re S.H.*, 879 A.2d 802, 805 (Pa. Super. 2005)). Moreover, we have explained that:

> The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

- 7 -

*Id.* (quoting *In re J.L.C. & J.R.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

The trial court is free to believe all, part, or none of the evidence presented

and is likewise free to make all credibility determinations and resolve conflicts

in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004). If

competent evidence supports the trial court's findings, we will affirm even if

the record could also support the opposite result. *In re Adoption of T.B.B.*,

835 A.2d 387, 394 (Pa. Super. 2003).

We are guided further by the following: Termination of parental rights

is governed by Section 2511 of the Adoption Act, which requires a bifurcated

analysis.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citing 23 Pa.C.S. § 2511,

other citations omitted). The burden is upon the petitioner to prove by clear

and convincing evidence that the asserted grounds for seeking the termination

of parental rights are valid. *R.N.J.*, 985 A.2d at 276.

With regard to Section 2511(b), we direct our analysis to the facts relating to that section. This Court has explained that:

> Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In **In re C.M.S.**, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. **Id.** However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. **In re K.Z.S.**, 946 A.2d 753, 762-63 (Pa. Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. **Id.** at 763.

**In re Adoption of J.M.**, 991 A.2d 321, 324 (Pa. Super. 2010).

In this case, the trial court terminated Mother's parental rights pursuant to section 2511(a)(1), (2), (5), (8) and (b). We need only agree with the trial court as to any one subsection of section 2511(a), as well as section 2511(b), in order to affirm. **In re B.L.W.**, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Here, we analyze the court's decision to terminate under sections 2511(a)(2) and (b), which provide as follows.

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> ***
>
> > (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity,

> abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> ***
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), (b).

We first address whether the trial court abused its discretion by terminating Mother's parental rights pursuant to section 2511(a)(2).

> In order to terminate parental rights pursuant to 23 Pa.C.S.[] § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002) (citations omitted).

- 10 -

Essentially, this portion of Mother's brief relating to the termination of her parental rights contains a recitation of the law and then sets forth numerous facts testified to at the hearing. Mother then simply concludes that these facts are insufficient to prove that Mother's parental rights should be terminated under any of the four subsections of section (a).

Specifically, with regard to section 2511(a)(2), the trial court stated in its opinion that,

> [t]hroughout the two year history of this case, Mother has had a repetitive history of abusing illegal substances starting with the initiation of this case for F.A.R. in December 2015. Approximately four (4) days prior to the Termination of Parental Rights Hearing on February 2, 2018, Mother tested positive, yet again, for both cocaine and marijuana. Mother also has a history of instability regarding her housing. Although Mother made some attempts at remedying the situation, such as counseling and drug testing, no true progress has been made to maintain stable housing and mend her drug and alcohol issues. In fact, Mother has yet to have moved beyond supervised visitation during the two years since the initiation of this matter with the Agency.

Trial Court Rule 1925(a) Opinion ("Rule 1925(a) Opinion"), 3/23/18, at 5 (citations to the record omitted). The trial court also noted that Mother had been in and out of prison, had not attended medical and therapy appointments,[3] and had not provided gifts or cards to the Children or visited with them on a consistent basis.

---

[3] In her brief, Mother indicates that she was notified of some of these appointments, but points out that she was not invited to attend any of them. However, she acknowledges that during part of this period she was incarcerated and could not have attended the appointments in any case.

Having reviewed the record, we conclude that it supports the findings of the trial court that Mother has not provided the Children with the essential parental care, control and subsistence necessary for their mental and physical well-being, and that Mother is unable to remedy the causes of her parental incapacity, neglect or refusal. While the trial court noted that Mother appears to have made some recent progress, it is clear that Mother will not, or cannot, become a capable parent for the Children at any point in the foreseeable future. Thus, Mother is not entitled to any relief.

Next, we consider whether the trial court abused its discretion by terminating Mother's parental rights pursuant to section 2511(b), *i.e.*, Mother's issue III. We have discussed the required analysis under section 2511(b) previously in this memorandum. ***See In re Adoption of J.M.***, 991 A.2d at 324. Specifically, in connection with this issue, Mother asserts that there is a strong bond with the Children, that they love her, and that severing this bond on a permanent basis will be detrimental to the Children. However, the trial court found that terminating Mother's parental rights would best serve the Children's needs and welfare. In its opinion, the trial court summarized its reasoning, explaining:

> In the case of S.C.C., this [c]ourt found that there was not a healthy bond between Mother and child. Mother had specifically said, in [c]ourt and in front of S.C.C.[,] that she would not fight for her parental rights of S.C.C.[,] which emotionally upset S.C.C. Testimony further indicated that the bond between Mother and S.C.C. was not strong and that greatly stems back to the age of S.C.C. and the fact that S.C.C. was primarily raised by grandfather prior to Agency involvement. In the ca[s]e of F.A.R., the bond is

- 12 -

quite strong. However, as this [c]ourt's order states, there is such a thing [as] a strong bond that is toxic for the child. There is at times a role-reversal between F.A.R. and Mother. When Mother communicates adult information to the child, such as when she got kicked out of her recovery house, the bond combined with the role-reversal creates a high level of anxiety in F.A.R. Therefore, the best interests of the [C]hildren require termination of Mother's parental rights under 23 Pa.C.S. § 2511(b)....

Rule 1925(a) Opinion at 6-7 (citations to the record omitted). Again, we have reviewed the record and conclude that the court's findings and conclusions are supported by the evidence before the court. Thus, Mother is not entitled to relief.

Lastly, we turn to Mother's first issue concerning the goal change to adoption for the Children. The court determined that based on its conclusion that the termination of Mother's parental rights was appropriate under the circumstances here, its only valid option was to order a goal change to adoption. *See* Rule 1925(a) Opinion at 3. Mother's brief contains a recitation of the law relating to a goal change and then she argues that she has stable housing and employment and that she is no longer incarcerated and can attend the Children's medical and therapy appointments. Mother also contends that the Children each have a bond with her.

This Court's standard of review involving a goal change for a dependent child is as follows:

> In cases involving a court's order changing the placement goal ... to adoption, our standard of review is abuse of discretion. *In re N.C.*, 909 A.2d 818, 822 (Pa. Super. 2006). To hold that the trial court abused its discretion, we must determine its judgment was "manifestly unreasonable," that the court

disregarded the law, or that its action was "a result of partiality, prejudice, bias or ill will." *Id.* (quoting *In re G.P.-R.,* 851 A.2d 967, 973 (Pa. Super. 2004)). While this Court is bound by the facts determined in the trial court, we are not tied to the court's inferences, deductions and conclusions; we have a "responsibility to ensure that the record represents a comprehensive inquiry and that the hearing judge has applied the appropriate legal principles to that record." *In re A.K.*, 906 A.2d 596, 599 (Pa. Super. 2006). Therefore, our scope of review is broad. *Id.*

*In re S.B.*, 943 A.2d 973, 977 (Pa. Super. 2008).

Pursuant to the Juvenile Act, 42 Pa.C.S. § 6351(f), when considering a petition for goal change for a dependent child, the juvenile court is to consider, *inter alia*: (1) the continuing necessity for and appropriateness of the placement; (2) the extent of compliance with the family service plan; (3) the extent of progress made towards alleviating the circumstances which necessitated the original placement; (4) the appropriateness and feasibility of the current placement goal for the children; and (5) a likely date by which the goal for the child might be achieved. *In re S.B.*, 943 A.2d at 977. The best interests of the child, and not the interests of the parent, must guide the trial court. *Id.* at 978.

Our review of the record in this case and the statutory directives governing a goal change support the conclusion that reunification of Children with Mother is not a realistic goal. Mother is primarily seeking to have this Court reweigh the evidence in a light more favorable to her. However, it is beyond our purview to disturb the credibility determinations of the trial court when the testimony relied upon is supported in the record. The trial court was

- 14 -

free to conclude that Mother was unlikely to remedy the issues in the near future; thus, the permanency needs of Children dictate changing their goal to adoption. We are compelled to conclude that the trial court did not err in ordering the change of goal to adoption.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/16/2018